UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| RESCO GROUP, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:18 CV 80 |
| | ) | |
| CAMPBELL MACHINERY, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION and ORDER

This matter is before the court on defendants' partial motion to dismiss. (DE # 5.)

For the reasons identified below, defendants' motion will be granted.

## I.     BACKGROUND

Plaintiff Travelers Property Casualty Company of America ("Travelers") is an

insurance company that insured plaintiff Resco Group, Inc. ("Resco"). (DE # 1 at 2.)

Defendants Campbell Machinery, LLC ("Campbell") and C.C.D. Engineering, Inc.

("C.C.D") repair and rebuild heavy manufacturing equipment. (*Id.*)

Resco operates a plant that manufactures refractory blocks. (*Id.* at 3.) In February

2016, defendants responded to Resco's solicitation for bids to replace the gear pumps on

one of its presses with piston pumps. (*Id.*) Defendants submitted three different quotes

for work on the press: quote 1512301D; quote 160317A; and quote 160318A. (*Id.* at 2-3.)

Quote 1512301D was a quote for the installation of the new motors in the press and

quote 160317A was a quote for cleaning the hydraulic tank in the press to remove

debris.[1] (*Id.* at 3-4.) Defendants were awarded the project. (*Id.* at 3.)

Plaintiffs allege that defendants inaccurately determined that holes needed to be cut in the hydraulic tank in order to accommodate the new pumps. (*Id.*) Plaintiffs claim that defendants negligently cut into the tank, and then negligently cleaned up the resulting debris in the tank. (*Id.* at 3-4.) According to plaintiffs, less than one hour after the new pumps were activated, the debris in the machine caused it to seize and become inoperable. (*Id.*) As a result, Travelers paid Resco $377,627 on Resco's insurance claim, and Resco lost its deductible. (*Id.*)

Plaintiffs' complaint alleges six counts against defendants: (1) negligence; (2) breach of contract; (3) breach of implied warranty; (4) negligence *per se*; (5) negligent misrepresentation; and (6) strict liability. (DE # 1.) Defendants now move to dismiss plaintiffs' negligence, negligence *per se*, and strict liability claims for failure to state a claim. (DE # 5.) Defendants argue that, under Indiana's economic loss doctrine, plaintiffs may not seek to recover their purely pecuniary losses related to defendants' performance of the contract. (*Id.* at 6.) Defendants also make alternative arguments as to why plaintiffs' negligence *per se* and strict liability claims fail. However, because this court finds that the economic loss doctrine precludes plaintiffs' negligence, negligence *per se*, and strict liability claims, the court need not address defendants' remaining arguments.

---

[1] The complaint does not specify what services were contemplated in quote 160318A.

## II.    LEGAL STANDARD

A judge reviewing a complaint pursuant to Rule 12(b)(6) must construe the allegations in the complaint in the light most favorable to the non-moving party, accept all well-pleaded facts as true, and draw all reasonable inferences in favor of the non-movant. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Reger Dev., LLC v. Nat'l City Bank,* 595 F.3d 759, 763 (7th Cir. 2010). Under the liberal notice-pleading requirements of the Federal Rules of Civil Procedure, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## III.    ANALYSIS

Indiana's economic loss doctrine limits recovery for damages arising out of a party's performance of its contractual obligations. *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153 (Ind. 2005). However, the doctrine does not apply to damage to "other property" – property that was not the subject of the parties' agreement. *Id.* "[D]amage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected." *Id.* "Whether damaged property is 'other property' turns on whether it was acquired by the plaintiff as a component of the

defective product or was acquired separately." *Id.* at 151.

There are two cases from the Supreme Court of Indiana that address the "other property" exception to the economic loss doctrine. Comparison of these cases is helpful in demonstrating why the exception does not apply in this case. In *Gunkel*, the plaintiffs contracted with a third party for the construction of a new home. 833 N.E.2d at 151. Six months later, the plaintiffs contracted with the defendant construction company to install a stone façade on the home. *Id.* Shortly after the façade was installed, water began to leak through gaps in the façade, damaging the walls, ceilings, floors, drywall, and carpet in the home. *Id.* The plaintiffs sued the construction company for negligence, and the construction company argued that the claim was barred by the economic loss doctrine. *Id.* at 151-52. The Supreme Court of Indiana held that the negligence claim regarding the façade was barred, but the negligence claim regarding the damage to the rest of the home was not, as the rest of the home qualified as "other property." *Id.* at 156. The Court found that the product or service that the plaintiffs purchased from the defendant was the façade, and the agreement to install the façade was made under a contract that was wholly independent from the contract to build the home. *Id.* The home itself qualified as "other property" because it was not the subject of plaintiffs' contract with defendants. Therefore, plaintiffs' negligence claim regarding the home was not precluded by the economic loss doctrine. *Id.* at 156-57.

In *Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.*, a city library hired an architect to renovate its library. 929 N.E.2d 722, 725 (Ind. 2010). The

architect then hired subcontractors to perform architectural and engineering services. *Id.* After the construction had significantly progressed, the library discovered problems with the structural integrity of the parking garage, which served as the foundation for the rest of the building. *Id.* The library sued the subcontractors and the subcontractors argued that the library's negligence claims were barred by the economic loss doctrine. *Id.* at 726. Here, unlike in *Gunkel*, the Supreme Court of Indiana agreed that the negligence claims were barred. The Court found that the library "purchased a complete renovation and expansion of all the components of its facility as part of a single, highly-integrated transaction." *Id.* at 731. Therefore, "for purposes of the other property rule, the product or service that the Library purchased was the renovated and expanded library facility itself." *Id.* The Court specifically distinguished the case before it from that in *Gunkel*. "The contrast with this case is clear. Here the product or service purchased from the Defendants was an integral part of the entire library construction project, not independent from it. Any damages alleged to have resulted from the Defendants' negligence were to the 'product' the Library purchased, not to 'other property.'" *Id.* at 732. Thus, where property is provided or serviced by a defendant in the same transaction, as an integrated whole, the property is not considered "other property" for purposes of the economic loss doctrine. *Id.*

The case at bar is much more akin to *Indianapolis* than to *Gunkel*. Like in *Indianapolis*, here parties' agreements contemplated service to the press as a whole, and therefore the "other property" exception does not apply. While plaintiffs argue that the

parties' transaction was limited to defendants' replacement of the press pumps, this argument is belied by the allegations in their complaint. Plaintiffs specifically allege that defendants were hired to clean the debris in the press, pursuant to quote 160317A. According to plaintiffs, defendants' negligent performance of their contract to clean the press caused the press to seize and become inoperable. Thus, in their negligence claim, plaintiffs seek a tort remedy for deficient contract performance. This they cannot do. Plaintiffs are precluded from recovering in tort for their disappointed contractual expectations.

This holding is consistent with the rational underlying the economic loss doctrine. "The theory underlying the economic loss doctrine is that the failure of a product or service to live up to expectations is best relegated to contract law and to warranty either express or implied. The buyer and seller are able to allocate these risks and price the product or service accordingly." *Gunkel*, 822 N.E.2d at 155. "Allowing a buyer to recover in tort where he has suffered only economic loss allows him to circumvent the seller's effective limitation or exclusion of warranties under the U.C.C., and subjects manufacturers to liability for damages of unknown and unlimited scope." *Id.* (quoting *Reed v. Cent. Soya Co.*, 621 N.E.2d 1069, 1074 (Ind. 1993), *opinion modified on reh'g*, 644 N.E.2d 84 (Ind. 1994)). Here, the parties contemplated defendants' service of the press as a whole and therefore the parties were in a position to allocate the risks and price of the service at the time they entered into the agreements. Thus, it is contract law, rather than tort law, that governs the present dispute.

## IV. CONCLUSION

For these reasons, the court **GRANTS** defendants' partial motion to dismiss

(DE # 5), and dismisses Count I: Negligence; Count IV: Negligence *Per Se*; and Count

VI: Strict Liability, of plaintiffs' complaint.

**SO ORDERED.**

Date: August 14, 2018

s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT